## Fouts v. Fouts.

Jan. 15, 1946.

Astor Hogg for appellant.

L. C. Wall for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Sam and Darkey Fouts were married in 1912. Eleven children were born to the union, though Mrs. Fouts says that a number of years ago she lost two additional children through a miscarriage. The marital road of the couple seems to have been a rough and unhappy one. About 25 years ago the Foutses moved to Benham, where Mr. Fouts was employed as a carpenter. He has been engaged in that occupation at that place ever since and makes about $90 a week. After the couple had lived at Benham about a year they moved to Cumberland. After living there a short time they moved on a 200-acre farm on Cloverlick which Mr. Fouts rented for $175 a year. In 1927, Mr. Fouts purchased a house and lot in Cumberland for $850, title to which was taken in himself and his wife. In 1936, Mr. Fouts conveyed his interest in the property to his wife. In 1944, Mrs. Fouts left the home on Cloverlick and moved into the house in Cumberland to which she held title. She took with her three infant children, and left one infant with Mr. Fouts. During the latter part of 1944 Mr. Fouts instituted this action seeking an absolute divorce from his wife, custody of the four infant children and restoration of the Cumberland property. The ground upon which the plea for a divorce was based was cruel and inhuman treatment. In her answer and counterclaim Mrs. Fouts denied the charges made against her by her husband, and in turn sought a divorce on the ground of cruelty on his part. She asked for the custody of the four infant children and maintenance for them, and also an allowance of alimony for herself and a fee for her attorney. The trial resulted in the granting of an absolute divorce to Mr. Fouts, a denial of alimony to Mrs. Fouts, the direction that she retain the Cumberland property and the household goods therein, the granting of the custody of the 14 year old child (apparently the father's favorite) to Mr. Fouts, the granting of the custody of the remaining three infant children to Mrs. Fouts with directions that Mr. Fouts pay directly to each of these children the sum of $20 per month for maintenance until further

order of court and the allowance of $100 to Mrs. Fouts' attorney. Mr. Fouts is appealing from the part of the judgment awarding the Cumberland property to Mrs. Fouts and the part awarding her custody of the three children and adjudging that he pay to each of them the sum of $20 per month for maintenance. Mrs. Fouts has filed no cross-appeal.

A recitation of the sharply conflicting evidence would serve no useful purpose. Apparently, the parties were unable to get along peaceably from the early years of their marriage. Some of the children testified in support of their father and some in support of their mother. When one child was questioned concerning the environment of the Cloverlick home and the home to which she went with her mother in 1944, she said, "It was like stepping out of hell into heaven." Mr. Fouts claimed that he did most of the farming, while Mrs. Fouts said that she and some of the children, all of whom appear to have been afforded only meager educational opportunities, did practically all of the farming. She said also that she helped clear the land and helped some of the older children cut mine timbers. Numerous charges were made against Mr. Fouts concerning relations with other women, but few, if any, of the charges were supported by convincing evidence. There can be little doubt that a state of affairs finally developed in the Fouts home which made it impossible for the couple to live together, but we are not convinced from our examination of the record that the chancellor was warranted in finding that Mr. Fouts was entitled to a divorce. However, we have no authority to disturb that part of the judgment. We may say in passing that, had we been passing upon the question originally, we would have decreed a divorce from bed and board, but it is unnecessary to go into that question, because, as we have noted, no cross-appeal has been filed.

We have no criticism of the part of the judgment dealing with the custody of the four infant children. The custody of the father's favorite was awarded to him and it was only proper that the custody of the three younger children, ages 12, 10 and 8, should be awarded their mother, since no question has been raised as to her moral fitness to care for them. The allowance of $20 a month for the support of each child is reasonable and proper.

This leaves the question of whom should have been adjudged the owner of the Cumberland property. Certainly, until recent years, Mrs. Fouts was a hardworking woman, and she and the children assumed the responsibility for the major part of the support of the family by producing foodstuffs and raising stock on the farm. While Mr. Fouts testified he spent all of his income, and sometimes more, in support of his family, his own testimony showed that he did not spend more than $10 or $15 a week for groceries. On the other hand, Mrs. Fouts testified that his contribution for groceries ranged around $5 a week. What he did with the rest of his money is not clear from the record, though he said he owned government bonds in the amount of some $1,850.

It seems that the couple separated about nine years ago and six years ago Mrs. Fouts filed suit for divorce, which action was finally dismissed. There is evidence to the effect that following the reconciliation, if there ever was one after the first breach, Mr. Fouts gave all the personal property to Mrs. Fouts and deeded her his half interest in the Cumberland property. The consideration in the deed was $1 and other valuable considerations. The testimony concerning the reason why Mr. Fouts conveyed his one-half interest in the property to his wife and the recitation in the deed leads us to the conclusion that the chancellor was warranted in adjudging that Mrs. Fouts should retain the property. We think he got the right answer, notwithstanding the fact that his judgment recites that she became the owner of the property by reason of the marital relationship of the couple. But, as said in Stockton v. Hall, 3 Ky. 160, Hardin, 160, "It is better to do right from wrong inducements, than to reverse that which is right because it was wrongfully engendered."

Judgment affirmed.